UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

MARVIN EVANS, ET AL.            *       CIVIL ACTION NO.  10-1916

VERSUS                          *       JUDGE ROBERT G. JAMES

INTERNATIONAL PAPER             *       MAG. JUDGE KAREN L. HAYES
COMPANY, ET AL.

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 9] filed by defendant, International Paper Company, on its own behalf, and on behalf of Papco, Inc.  For reasons explained below, it is recommended that the motion be **GRANTED in part and DENIED in part**.

<u>Background</u>

On December 9, 2010, 37 named plaintiffs, with Marvin Evans as lead plaintiff, filed the instant suit, individually, and as representatives of a putative class of former employees of defendants, International Paper Company ("IP") and/or Papco, Inc. ("Papco"), for recovery of damages they suffered as a result of occupational hearing loss sustained during their employment with defendants.  The petition asserts theories of recovery for negligence, strict liability, intentional tort, fraudulent misrepresentation, and battery.  Plaintiffs originally filed suit in the 4th Judicial District Court for the Parish of Morehouse, State of Louisiana.  On December 28, 2010, defendant, IP, removed the case to federal court on the basis of diversity jurisdiction, as expanded by the Class Action Fairness Act.  28 U.S.C. § 1332(d).

On January 19, 2011, IP filed the instant motion to dismiss for failure to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  On February 9, 2011, plaintiffs filed a memorandum in opposition to the motion to dismiss.  On February 22, 2011, IP filed a reply memorandum in support of its motion to dismiss.  The matter is now before the court.

## 12(b)(6) Standard

In federal court, sufficiency of the pleadings is determined by federal procedure.  *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010) (citations omitted).  The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  Fed.R.Civ.P. 8(a)(2).  Circumstances constituting fraud or mistake, however, must be alleged with particularity.  Fed.R.Civ.P. 9(b).[1]  However, "[m]alice, intent, knowledge, and other conditions of a person's mind" are subject to the general pleading requirements of Rule 8(a).  *Iqbal*, 129 S.Ct. at 1954. The particularity demanded by Rule 9(b) supplements Rule 8(a)'s pleading requirement.  *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).  "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)."  *Id*. (citation omitted).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, ____ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.

---

[1]  Allegations of fraud under Louisiana law asserted in federal court implicate the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *Conerly Corp. v. Regions Bank*, 2008 WL 4975080 (E.D. La. Nov. 20, 2008).

Ct. 1955 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *See Iqbal, supra*.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.  Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*.  A pleading comprised of  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  *City of Clinton, Ark, supra*.[2]

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. (citation omitted).   A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely.  *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  Nonetheless, courts may rely upon "documents incorporated into the

---

[2]  Plaintiffs largely, if not exclusively, rely upon pre-*Twombly* and *Iqbal* decisions to support their interpretation of the court's standard of review on a 12(b)(6) motion.  *Twombly* and *Iqbal*, however, modified the status quo ante.  They generally require more factual support at the pleading stage than was demanded previously.

complaint by reference, and matters of which a court may take judicial notice." *Id.*

## Discussion

Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211(1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817 (1938).  In diversity cases, federal courts apply state laws on limitations and tolling.  *Hensgens v. Deere & Co.*,  869 F.2d 879, 880 (5th Cir. 1989).

Here, neither side contests that the substantive issues raised by defendant's motion are governed by Louisiana law.  *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled), *cert. denied sub nom. Xavier University of Louisiana v. Travelers Cas. Property Co. of America*, ___ U.S. ___, 128 S.Ct. 1230 (Feb 19, 2008); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed).[3]  To determine Louisiana law, federal courts look to the final decisions of the Louisiana Supreme Court.  *Moore v. State Farm Fire & Casualty Co.*, 556 F.3d 264, 269 (5th Cir. 2009) (citation omitted).

IP raises several arguments to support its motion to dismiss:  1) plaintiffs' claims against Papco should be dismissed because Papco no longer exists; 2) plaintiffs' claims against IP are barred by the exclusivity provisions of the Louisiana Workers' Compensation Act; 3) plaintiffs' claims do not contain sufficient factual allegations to support the minimum pleading requirements of Rules 8(a) and 9(b); and 4) plaintiffs' claims are time-barred.  The court

_____

[3]  In *Jefferson*, the Fifth Circuit's decision incorporated the underlying district court opinion, 930 F. Supp. 241 (E.D. La. May 31, 1996) (J. Vance)

addresses these arguments *seriatim*.

**I.      Papco**

IP seeks dismissal on behalf of Papco because Papco purportedly was dissolved on January 4, 2002, and thus, no longer exists.  In support of its argument IP submitted an affidavit by IP's Assistant Secretary, Joseph Saab.  (M/Dismiss, Exh. 1).  However, in the context of a 12(b)(6) motion, the court generally is constrained to the complaint and its attachments.  *See Dorsey, supra*.  Even if the court were to consider Mr. Saab's affidavit, it failed to include several exhibits referenced in the affidavit, and which purport to provide support for Papco's dissolution.  In addition, plaintiffs have adduced pleadings from other cases where the supposedly defunct Papco made appearances therein.  (Pl. Opp. Memo., Exhs.).

Plaintiffs also argue that IP does not enjoy standing to seek dismissal of a co-defendant.  Ordinarily, "a litigant may not merely 'champion the rights of another.'"  *Audler v. CBC Innovis, Inc.*, 519 F.3d 239 (5th Cir. 2008) (citations omitted).  One recognized exception to this rule is when a removing defendant argues that a non-diverse or non-consenting co-defendant was improperly joined in an effort to defeat removal.  Here, however, IP need not prove improper joinder because it may rely upon diversity jurisdiction, as expanded by the Class Action Fairness Act.

Furthermore, if, as IP contends, Papco is no longer a going concern and if, additionally, IP is not responsible for any of Papco's liabilities, then IP certainly has no interest in championing Papco's rights, and has nothing to fear from a default judgment entered against Papco.  Under these circumstances, plaintiffs simply will obtain a meaningless and unenforceable default judgment against Papco.

Nonetheless, the court possesses inherent authority to dismiss an action *sua sponte,*

without motion by a defendant.  *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962).  A "district court may dismiss an action on its own motion under Rule 12(b)(6) 'as long as the procedure employed is fair.'" *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *see also McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties) (citing *Magourik v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)).

To the extent that IP's arguments advanced to support dismissal of plaintiffs' claims against IP, apply with equal force to plaintiffs' claims against Papco, the undersigned will recommend dismissal of those claims, on the same grounds.

## II.     Occupational Hearing Loss and the Louisiana Workers' Compensation Act

The Louisiana Workers' Compensation Act ("LWCA" or the "Act") provides that *except for intentional acts*, workers' compensation benefits are an employee's exclusive remedy for work-related injuries and illnesses against her employer.  La. R.S. 23:1031-1032; *Deshotel v. Guichard Operating Co.*, 916 So. 2d 72, 75 (La. 2004) (citation omitted); *Harris v. Wal-Mart Stores, Inc.*, 205 F.3d 847, 849 (5th Cir. 2000);  *McGinnis v. Waste Management of Louisiana, L.L.C.*, 914 So.2d 612, 615 (La. App. 2d Cir. 2005).  "Where the act covers an accidental injury *or occupational disease*, it is the employee's exclusive remedy; the employer's immunity from tort suits extends to all but intentional torts."  *O'Regan v. Preferred Enterprises, Inc.*, 737 So.2d 31, 36-37 (La. 1999) ("*O'Regan I*") (emphasis added).  However,

> [t]he exclusive remedy provision refers only to injuries for which the employee or his dependent is entitled to be compensated, and the Act becomes the exclusive remedy for employees against their employers only for such diseases. See LA. REV. STAT. 23:1031.1(H). Accordingly, injuries non-compensable under the Act by LA. REV. STAT. 23:1031.1(D) are also excluded from the shield against tort liability provided to employers by the exclusivity clause in LA. REV. STAT. 23:1031.1(H).

*O'Regan v. Preferred Enterprises, Inc.*, 758 So.2d 124, 134, 1998-1602  (La. 2000) ("*O'Regan II*").

Coverage under the Act is liberally construed, whether the employee is attempting to obtain compensation benefits or to pursue tort damages. *O'Regan, supra*.[4]  Nonetheless, "[w]hen the employer seeks to avail itself of tort immunity under Section 1032, the employer has the burden of proving entitlement to immunity." *Mundy v. Department of Health and Human Resources*, 593 So.2d 346, 349 (La. 1992).

Plaintiffs contend that noise induced hearing loss ("NIHL"), as alleged in the instant petition, is not an "accident" within the meaning of the LWCA.  In a recent case, the Fifth Circuit analyzed the LWCA's definition of an "accident" to determine whether NIHL constituted "bodily injury by accident" or "bodily injury by disease" under the terms of an insurance policy. *Bridgestone Firestone North American Tire, L.L.C. v. Liberty Mut. Ins. Co.*, 381 Fed. Appx. 467, 469, 2010 WL 2465031 (5th Cir. 2010) (unpubl.).  In so doing, the court concluded that NIHL was not an "accident," under various incarnations of the LWCA.  *Id*.  The court, however, did not consider whether NIHL otherwise could be considered an occupational disease subject to coverage under the Act.  *Id*.

In 2007, Judge Walter observed that,

[a]s originally enacted, the LWCA only covered job related "accidents" as that term was defined in La. R.S. 23:1021. In 1952, the LWCA was broadened to provide for coverage of listed occupational diseases and exposures.  The LWCA was amended again in 1975 to provide that all occupational diseases are compensable under the LWCA. A disease is considered occupational if it is contracted as a result of work related conditions.  In 1989, the legislature amended

---

[4]  At least in the statutory employer context, however, "every presumption should be on the side of preserving the general tort or delictual rights of an injured worker against the actual wrongdoer, in the absence of explicit statutory language limiting or excluding such rights." *Roberts v. Sewerage and Water Bd. of New Orleans*, 634 So.2d 341, 346 (La. 1994).

the LWCA again to exclude certain progressive diseases from coverage under the LWCA, none of which are at issue in the case sub judice.

*Carter v. Chemtrade Refinery Services, Inc.*, 2007 WL 2491689 (W.D. La. Aug. 29, 2007) (internal citations omitted).

In other words, from 1975 until 1989, the LWCA provided coverage for all occupational diseases.  Indeed, "[w]here symptoms of disability appear gradually, increasing imperceptively until finally the point of disability is reached, the courts often call this 'occupational disease' for which Compensation is not allowed, *except under LSA-R.S. 23:1031.1." Whitworth v. Kaiser Aluminum & Chemical Corp.*, 135 So.2d 584 (La. App. 4th Cir. 1962) (citations omitted) (emphasis added).  Moreover, courts have recognized NIHL as an occupational disease.  *See Whitworth, supra* (so-called "Boilermaker's deafness" is an occupational disease caused by working in places with loud noises).

The reason that courts usually have declined to find that NIHL was covered by the LWCA, at least for the period from 1975 until 1989, was that gradual hearing loss was believed not to be compensable under the Act.  *See Carter, supra*; *Sayrie v. Harbert Intern., Inc.*, 576 So.2d 1127 (La. App. 3d Cir. 1991); *Connor v. Naylor Industrial Services*, 579 So.2d 1226 (La. App. 3d Cir. 1991).  Here, however, IP has pointed out that until it was amended beginning in 1983 the LWCA included a catch-all provision that provided compensation "where the employee is seriously permanently disfigured about the face or head, *or where the usefulness of a physical function is seriously permanently impaired . . .*" *Swilley v. Sun Oil Co.*, 506 So.2d 1364, 1368 n1 (La. App. 2d Cir.), *writ denied*, 512 So.2d 1181 (La. 1987) (citing La. R.S. 23:1221(4)(p) (West 1982)) (emphasis in original).  Furthermore, the *Swilley* court determined that a worker's loss of taste and smell constituted a serious impairment of a physical function that was compensable under the Act, at that time.  *Id.*

8

In sum, for the period from 1975 until 1983, NIHL arguably was an occupational disease that was compensable under the LWCA.  IP's argument relies significantly upon *Swilley*'s interpretation and application of former § 1221(4)(p).  To determine Louisiana law, however, federal courts are obliged to look to the final decisions of the Louisiana Supreme Court.  *Moore, supra.*.  In the absence of a decision by the Louisiana Supreme Court on a given issue, federal courts are compelled to make an *Erie* guess.  *In re Katrina Canal Breaches Litigation*, 495 F.3d at 206; *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 628 (5th Cir. 2000).  In so doing, the court must use its best judgment to determine

> how [the Louisiana Supreme C]ourt would resolve the issue if presented with the same case.  In making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes.  Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana.  Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them.

*In re Katrina Canal Breaches Litigation*, 495 F.3d at 206 (internal citations and quotation marks omitted).

In this case, IP has not provided the requisite analysis for the court to conclude that plaintiffs' NIHL constituted a serious impairment of the usefulness of a physical function, and was therefore compensable under the Act prior to 1983.

Moreover, Louisiana applies the "significant tortious exposure" theory for determining when a cause of action accrues in a long-latency occupational disease.  *Austin v. Abney Mills, Inc.*, 824 So.2d 1137 (La. 2002) (citation omitted).  An individual cannot be divested of an accrued property right by subsequent legislative action.  *Id*.  Therefore, those plaintiffs' claims that accrued prior to 1975 are not barred by the LWCA.  Similarly, those plaintiffs whose significant tortious exposure occurred after 1983 arguably also escape the LWCA's exclusivity

restraint.  None of the named plaintiffs' alleged years of exposure to excessive occupational noise are wholly contained within the 1975-1983 window.  Thus, IP has failed to establish that plaintiffs' claims are barred by the LWCA.  At this point, plaintiffs' tort claims remain plausible.

## III.   Sufficiency of the Pleadings

a)   Intentional Tort (Including Battery and Fraudulent Misrepresentation)

Even if IP had established that the LWCA applies to the instant claims, plaintiffs further allege that IP is guilty of intentional tort(s), battery,[5] and fraudulent misrepresentation – potential exceptions to the LWCA's exclusivity provision.  However, the intentional act exception to the workers' compensation exclusivity provisions has been narrowly interpreted by the Louisiana courts.

An act is intentional when the employer either (1) consciously desires the physical result of his act; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result.  *White v. Monsanto Co.*, 585 So. 2d 1205, 1208 (La. 1991).  In other words, "intent has reference to the consequences of an act rather than to the act itself."  *White, supra*. "The substantially certain test is satisfied when an employer *consciously* subjects an employee to a hazardous or defective work environment where injury to the employee is *nearly inevitable*."  *Guillory v. Domtar Industries, Inc.*, 95 F.3d 1320, 1327 (5th Cir. 1996) (emphasis in original).  The term, "substantially certain," has been further defined to mean "virtually sure," and "incapable of failing."  *Bridges v. Carl E. Woodward, Inc.*, 663 So.2d 458, 463 (La. App. 4th Cir. 1995); *Landry v. Uniroyal Chemical Co., Inc.*, 653 So.2d 1199, 1203 (La. App. 1 Cir. 1995); *Snow v. Lenox International*, 662 So.2d 818, 820,  (La. App. 2d Cir. 1995);

---

[5]  Battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact . . ."  *Caudle v. Betts*, 512 So.2d 389, 391 (La. 1987).  It is a species of intentional tort.  *Id*.

and *Scafidi v. Thompson-Hayward Chemical, Inc.*, 1995 Westlaw 341569 (E.D. La. June 6, 1995).  It requires more than a reasonable probability, even more than a *high probability*, that an accident or injury will occur.  *Bridges*, *supra*; *Landry*, *supra*.  Mere knowledge and appreciation of risk does not constitute intent, nor does reckless or wanton conduct or gross negligence.  *Id*.

 In this case, plaintiffs allege that IP was aware of the dangers posed by exposure to hazardous noise levels, and knew that it inevitably would injure its employees.  (Petition, ¶ 15).  Plaintiffs further allege in conclusory fashion that IP knew that it was substantially certain or inevitable that plaintiffs would suffer noise induced hearing loss.  (Petition, ¶ 24).

 As instructed by *Iqbal*, the court accords no weight to plaintiffs' conclusory allegations.  *See Iqbal, supra*.  Further, to the extent that plaintiffs' remaining allegations may be characterized as factual, they do not suffice to confer plausibility upon their intentional tort claims.  The court emphasizes that neither the failure to provide safety equipment, nor the failure to adhere to OSHA safety regulations constitute "intentional acts" sufficient to strip an employer's immunity accorded by the LWCA.  *Bridges*, 663 So.2d at 463.  Even, an employer's knowledge that similar injuries had occurred in the past does not establish that a related injury was "substantially certain" to occur in the future.  *See Snow*, *supra*.

 In *Reeves v. Structural Preservation Systems*, the Louisiana Supreme Court wrote, "[b]elieving that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation."  *Reeves v. Structural Preservation Systems*, 731 So.2d 208 (La. 1999).  In *Casto v. Fred's Painting, Inc.*, the court effectively held that an employer's refrigerator which *always* shocked anyone who touched it did not give rise to an intentional tort.  *See Casto v. Fred's Painting, Inc.*, 692 So.2d 408 (La. 1997), *reversing*,

11

*Casto v. Fred's Painting, Inc.*, 688 So.2d 72 (La. App. 5th Cir.).  The failure to properly train or supervise an employee also does not rise to the level of an intentional tort.  *See e.g., Rogers v. Louisiana Dept. of Corrections*, 982 So.2d 252, 258-259 (La. App. 2d Cir.), *writ denied*, 992 So.2d 931 (La. 2008) (improper training and safety requirements do not establish intentional tort); *Armstead v. Schwegmann Giant Super Markets, Inc.*, 618 So.2d 1140, 1143 (La. App. 4th Cir. 1993) (defendant's failure to instruct plaintiff on how to operate meat grinder or to repair safety switch established no more than negligence or gross negligence).

In short, given the Louisiana courts' considerable curtailment of the intentional tort cause of action, at least in the employment context, plaintiffs' minimal factual allegations do not suffice to state a claim for relief.  *See Iqbal*.

Furthermore, plaintiffs' claim for fraudulent misrepresentation fails to meet Rule 9(b)'s heightened pleading requirement.  What constitutes sufficient particularity for Rule 9(b) varies with the facts of each case.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992).  At a minimum, however, Rule 9(b) requires a plaintiff pleading fraud "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-565 (5th Cir. 2002) (quoted sources and internal quotation marks omitted).  In addition, under Louisiana law, the elements of an intentional misrepresentation claim include,  "(a)  a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury."  *Guidry v. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999) (citations omitted).  To establish a claim for intentional misrepresentation by silence or inaction, plaintiff must further demonstrate that the defendant owed a duty to disclose information.  *Kadlec Medical Center v. Lakeview Anesthesia*,

527 F.3d 412, 418 (5th Cir.) (citation omitted), *cert. denied by, Lakeview Anesthesia Associates v. Kadlec Medical Center*, ___ U.S.___, 129 S.Ct. 631 (2008).

In this case, plaintiffs' petition does not satisfy the more demanding pleading requirements for fraud.  Plaintiffs do not allege who disclosed (or failed to disclose) pertinent information about NIHL, when these misrepresentations or omissions occurred, where they occurred, or why this unspecified person committed the alleged fraud.

b)      <u>Negligence and Strict Liability</u>

Plaintiffs further allege that IP is responsible for their damages under theories of negligence and strict liability.  Under Louisiana law, the applicable sources for delictual liability are found in Civil Code Articles 2315 and 2317.  Under either article, plaintiff's burden of proof is now the same.  *See Dupree v. City of New Orleans*, 765 So. 2d 1002, 1007 n.5 (La. 2000).  Civil Code Article 2317.1, enacted in 1996, "abolished the concept of strict liability" that existed in Louisiana under the pre-1996 version of Article 2317.  *Broussard v. Voorhies*, 970 So.2d 1038, 1042 (La. App. 1st Cir. 2007), *writ denied*, 970 So.2d 535 (La. 2007).  Before the 1996 amendments, the "sole distinction between the burden of proof necessary to recover under a negligent action . . . versus a strict liability action . . . was . . . proving the defendant's scienter." *Lasyone v. Kan. City S. R.R.*, 786 So. 2d 682, 689 n9 (La. 2001); *Dupree, supra*.  Article 2317.1 "eliminated that distinction."  *Lasyone*, 786 So. 2d at 689 n.9; *Dupree*, 765 So. 2d at 1007 n.5.  In other words, under pre-amendment Article 2317, the custodian of a thing was presumed to know "of the risk presented by the thing under his control."  *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 975 (5th Cir. 1991) (citation omitted) (emphasis added).

To determine whether a plaintiff should recover on a negligence claim, Louisiana courts employ a duty-risk analysis.  *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d

87, 101 (La. 2005) (citation omitted).  Under the duty-risk analysis, plaintiff must establish five

elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific
> standard (the duty element); (2) proof that the defendant's conduct failed to
> conform to the appropriate standard (the breach element); (3) proof that the
> defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the
> cause-in-fact element); (4) proof that the defendant's substandard conduct was a
> legal cause of the plaintiff's injuries (the scope of liability or scope of protection
> element); and (5) proof of actual damages (the damages element).

*Id*.

The instant petition alleges that,

### 7.

At various times prior to July 16, 1976, the Plaintiffs listed on Exhibit "A" were
employed as direct employees by one or more of the Defendants at paper mills
and related facilities owned and operated by International Paper Company in the
State of Louisiana. The name of each Plaintiff, the International Paper Company
facility at which he or she worked and the time frame during which he or she
worked there are all set forth on Exhibit "A".

### 8.

During their employment at the International Paper Company facilities set forth
on Exhibit "A", Plaintiffs were occupationally exposed to hazardous levels of
industrial noise.

### 9.

As a result of the exposure described in Paragraph 8, Plaintiffs have suffered
hearing loss.

### 10.

It is specifically pled that the hearing loss suffered by Plaintiffs was gradual and
as a result of continuous long-term hazardous noise exposure at the International
Paper Company facilities and not an "accident."

(Petition, ¶¶ 7-10).

Plaintiffs further set forth a detailed and exhaustive list of duties that IP owed them, but

14

purportedly breached.  (Petition, ¶¶ 11-12).  Plaintiffs also attached an exhibit to the petition, which sets forth the named plaintiffs' ages, exposure years, and sites where they were exposed to hazardous levels of industrial noise.  (Petition, Exh. A).

Although IP takes issue with the lack of specific details provided by plaintiffs, the court observes that given the considerable number of named plaintiffs, the negligence and strict liability allegations are about as specific as they can be, without turning Rule 8(a) completely on its head.  *See e.g., Sadler v. International Paper Co.*, Civil Action No. 09-1254 (W.D. La. Sept. 29, 2010) [doc. # 29] (rejecting the degree of specificity urged by IP, and noting, instead, that the missing details were the proper subject of discovery).  The undersigned finds that plaintiffs have alleged sufficient facts to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *Twombly, supra*.

      c)    <u>Class Action Allegations</u>

In its motion, IP briefly challenges the sufficiency of plaintiffs' class definition.  The court will defer consideration of this issue until such time as plaintiffs seek certification of the class.

## IV.  Prescription

IP also urges the court to dismiss plaintiffs' complaint on the basis of prescription.  In Louisiana, delictual actions are subject to a liberative prescription period of one year, running from the day injury or damage is sustained, i.e., from when the cause of action accrues.  La. Civ. Code Art. 3492; *Succession of Dancie*, 191 La. 518, 186 So. 14 (La. 1939).  The prescription article is strictly construed against prescription and in favor of the obligation sought to be extinguished.  *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).  Ordinarily, the burden of

proof is on the party pleading prescription. *Lima v. Schmidt*, 595 So. 2d 624, 628 (La. 1992). However, when it appears that the claims have prescribed on the face of the complaint, then the plaintiff has the burden of proof to establish facts which would have the effect of interrupting or avoiding prescription. *Martens v. North*, 1998 WL 378137 (E.D. La. 1998); *Wimberly, supra*.

In Louisiana, a cause of action for negligence accrues when three elements are met:  fault, causation, and damages. *Austin, supra* (citing *Owens v. Martin*, 449 So.2d 448 (La.1984). Occupational hearing loss occurs simultaneously with exposure to excessive noise, and is complete when the exposure ceases. *Bath Iron Works Corp. v. Director, Office of  Bath Iron Works Corp. v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 506 U.S. 153, 113 S.Ct. 692 (1993).  Further, "[w]hen the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated." *South Central Bell Telephone Co. v. Texaco, Inc.*, 418 So.2d 531, 533 (La. 1982).

Here, the alleged damage to plaintiffs' hearing was complete by the time of their last exposure.  Also by that time, IP's active role in causing the hearing loss was complete.  Thus, plaintiffs' cause of action accrued at the time of their last exposure and prescription began to run. According to the exhibit attached to the petition, all but one of the plaintiffs' periods of exposure ended more than one year before suit was filed.  Accordingly, their claims are facially prescribed. One plaintiff, Derek Hammond, was last exposed to excessive noise some time in 2009.  The petition does not specify whether his last exposure occurred before or after December 9, 2009. Thus, it is not facially prescribed.

To overcome prescription, the remaining 36 named plaintiffs necessarily rely on the doctrine of *contra non valentem agere nulla currit praescripto*.  Under this theory, prescription is

16

suspended when the case falls into one of four categories.  *Wimberly, supra*.  Plaintiffs rely on *contra non valentem's* fourth category, also commonly known as the discovery rule.  The discovery rule provides that "prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based."  *Wimberly*, 635 So.2d at 211.  In other words, "[p]rescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."  *Campo v. Correa*,  828 So.2d 502, 510 (La. 2002) (citation omitted).  The prescriptive period will begin to run even if the injured party does not possess actual knowledge sufficient to initiate suit, as long as there is constructive knowledge.  *Id*.

Constructive knowledge is such notice that excites attention and places the injured party on guard and calls for further inquiry.  *Id*.  "Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead."  *Id*.  The discovery rule "will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own wilfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned."  *Renfroe v. State ex rel. Dept. of Transp. and Development,*  809 So.2d 947, 954 (La. 2002) (quoting *Corsey v. State of Louisiana, Through the Department of Corrections*, 375 So.2d 1319, 1322 (La.1979)).  The ultimate issue is the reasonableness of the plaintiffs' response.  *See, Campo, supra*.

In its motion, IP emphasizes that plaintiffs knew of their hearing loss because the class definition contemplates employees who sustained a "standard threshold shift" as supported  by "any audiogram for that employment performed prior to December 31, 1979 . . ."  (Petition, ¶ 5(b)).  However, the proposed class definition alternatively includes employees who sustained a

"material hearing impairment," without regard to a prior audiogram.  *Id*., ¶ 5(a).

The petition further alleges that the "lawsuit is filed within one year of Plaintiffs discovering that they have hearing loss *and* that Defendants are liable for the damages herein . . . Plaintiffs were completely unaware of the dangerous propensities of working in and/or around hazardous noise."  (Petition, ¶ 26) (emphasis added).  In other words, not only did plaintiffs remain unaware of the cause of their damages and the potential damaging effects of exposure to hazardous noise, they also did not discover that they had suffered hearing loss until some time within the year before they filed the instant suit.

If, as plaintiffs profess, they remained ignorant of not one, but *all* three components of their cause of action against IP until the past year, then as questionable as this may seem, the court is compelled to credit this e factual allegation at this stage of the proceeding.[6]  Accordingly, for purposes of this motion, plaintiffs lacked actual or constructive knowledge of their cause of action, and prescription was suspended during this period.  *See Owens*, 449 So.2d 448 at 451 n4 (*contra non valentem* suspends the running of prescription).  Plaintiffs timely filed suit within one year after the suspension was lifted.  (Petition, ¶ 26).

Nevertheless, because of the significant number of named plaintiffs, the court remains concerned that discovery may uncover circumstances which suggest that plaintiffs were aware of at least some components of their cause of action sufficient to trigger the running of prescription

---

[6] Although plaintiffs' allegation is perfunctory, and in many respects, conclusory, it effectively asserts a negative.  It is difficult to allege more detailed facts when one is asserting lack of knowledge.  While plaintiffs certainly could have elaborated upon the circumstances that caused them to recently discover their cause of action, that is not necessary at this stage.  *But see McKnight v. Dresser, Inc. McKnight v. Dresser, Inc.*, Civil Action No. 10-0543 (W.D. La. Nov. 30, 2010) [doc. # 27] (dismissing occupational hearing loss claim as time-barred despite plaintiff's allegation that he filed suit within one year of learning that he had a cause of action).

at an earlier date.  *See e.g., Albritton v. International Minerals & Chemical Corporation, et al.*, Civil Action No. 06-0774 (W.D. La.).  Towards this end, and to reduce the time and expense for all involved, it may behoove the parties to agree upon a questionnaire to be completed by each named plaintiff to focus his or her individual circumstances and time line.  *See Sadler, supra* (Rule 26(f) Report [doc. # 18]).

**V.    Amendment**

The court is obliged to "freely" grant leave to amend "when justice so requires." Fed.R.Civ.P. 15(a)(2).  It is conceivable that plaintiffs may be able to cure those portions of their complaint that the court, thus far, has found wanting.  Therefore, the instant recommendation that some of plaintiffs' theories of recovery be dismissed is subject to their right to seek leave of court to amend their complaint with a proposed pleading that cures the deficient allegations.

<u>**Conclusion**</u>

For the foregoing reasons,

**IT IS RECOMMENDED** that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 9] filed by defendant, International Paper Company, be **GRANTED IN PART,** and that plaintiffs' claims for intentional tort, battery, and fraudulent misrepresentation against defendants, International Paper Company *and Papco, Inc.*, be **DISMISSED, WITH PREJUDICE,** subject to plaintiffs' right to seek leave of court to amend their complaint with a proposed pleading that cures the deficient allegations against defendants within the deadline to file objections to this report and recommendation.  Fed.R.Civ.P. 12(b)(6).

**IT IS FURTHER RECOMMENDED** that the motion to dismiss [doc. # 9] otherwise be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 24th day of March 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE